UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
AMES RAY,                           :

       Plaintiff,                  :

       -v-                         :

DONALD WATNICK, JULIE STARK, and    :
JOHN DOES 1-5,                      :

       Defendants.                 :
------------------------------------x

15 Civ. 10176

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

    On December 31, 2015, plaintiff Ames Ray filed suit in this Court against defendants Donald Watnick and Julie Stark, who are attorneys representing Mr. Ray's ex-wife, Christina Ray, in an underlying state court matter. See Complaint ("Compl."), Dkt. 1, ¶ 1.[1] Ames claimed that defendants Watnick and Stark had made or consented to the making of deceitful statements during the course of that underlying litigation, in violation of New York Judiciary Law § 487. See id. ¶ 3. On February 26, 2016, defendants Watnick and Stark moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). See Notice of Motion, Dkt. 13.[2] At oral

---

[1] To avoid confusion, the Court will refer to Mr. Ray as "Ames" and to Ms. Ray as "Christina."

[2] The Complaint alleged that this Court has diversity jurisdiction, since Mr. Ray is a citizen of Texas and defendants Watnick and Stark are citizens of New York, and damages "at least equal or exceed[] the jurisdictional limit of this court." See Compl. ¶¶ 6-9; Prayer for Relief. Although defense counsel

argument on April 4, 2016, the Court indicated that it would

grant defendants' motion to dismiss and noted that final

judgment would be entered upon issuance of an Opinion explaining

the Court's reasoning. See Transcript of Oral Argument dated

April 4, 2016 ("Tr.") at 13:6-8, 14:2-5. This is the promised

Opinion and Order.

In ruling on a motion to dismiss under Fed. R. Civ. P.

12(b)(6),[3] the Court accepts as true the factual allegations in

the complaint and draws all reasonable inferences in favor of

the plaintiff. Town of Babylon v. Fed. Hous. Fin. Agency, 699

F.3d 221, 227 (2d Cir. 2012). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as

---

claimed at oral argument that no strictly jurisdictional issue had been
raised by defendants' motion to dismiss, see Tr. 2:17-21, defendants hinted
in their briefs at what seems to be an issue of the Court's subject-matter
jurisdiction – specifically, that any legal fees plaintiff had incurred in
responding to defendants' allegedly deceitful statements "would surely fall
below this Court's monetary jurisdictional threshold needed to support
diversity jurisdiction." Defendants Donald Watnick and Julie Stark's
Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint
("Def. Br.") at 22 n.17. Additionally, of course, the Court has "an
independent obligation to determine whether subject-matter jurisdiction
exists." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006). The Court hereby
determines that it can exercise diversity jurisdiction, since it does not
"appear to a legal certainty that the claim is really for less than the
jurisdictional amount." Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 115 (2d
Cir. 2002) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283,
288-89 (1938)).

[3] As stated at oral argument, the Court declines to convert this motion to one
for summary judgment, as plaintiff appears to request. See Tr. 3:4-12;
Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.
Br.") at 3. In evaluating a motion to dismiss, however, the Court may
consider state court records and other documents that the Complaint
references and relies on. See Chambers v. Time Warner, Inc., 282 F.3d 147,
153 (2d Cir. 2002); Carvalho v. Stevens, No. 12-cv-128, 2013 WL 3742532, at
*1 (S.D.N.Y. July 17, 2013).

true, to state a claim to relief that is plausible on its face."
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation
marks omitted).

In this case, the relevant allegations of the Complaint are
as follows. Christina, as noted, is Ames's former wife. <u>See</u>
Compl. ¶ 11. She divorced Ames in 1977, but had business
dealings with him until 1993. <u>See</u> <u>id.</u> Ames sued Christina in New
York State Supreme Court in 1998, seeking damages for breach of
a series of contracts in which Christina allegedly assumed
certain obligations to Ames that she later failed to pay. <u>See</u>
<u>id.</u> ¶¶ 12-14. The Law Offices of Donald Watnick became
Christina's attorney of record in or about March 2012. <u>See</u> <u>id.</u> ¶
15. The Complaint then describes eight allegedly deceitful
statements in court papers filed with the New York State Supreme
Court and Appellate Division that defendants purportedly made or
consented to while knowing the statements were untrue and
intending to deceive the courts in order to gain an advantage in
litigation. <u>See</u> <u>id.</u> ¶¶ 17-49. However, as to each of these
statements, plaintiff's allegations of intentional deceit are
doubtful on their face.

The first two statements at issue appeared in a brief that
defendant Watnick filed on January 25, 2013 in opposition to
plaintiff's motion <u>in limine</u> to preclude the admission of

3

Christina's expert report into evidence at trial. See id. ¶¶ 19-
21. In this brief, Watnick stated that "[t]he third quarrel Dr.
Kirstein has with the Report is that his review of the evidence
does not reveal physical abuse. Clearly, Dr. Kirstein missed
plaintiff's admission in his deposition that he physically
abused Christina and that she was fearful of him." In the same
brief, Watnick stated that "as this Court recognized, plaintiff
also admits the existence of oppressive circumstances and that
he knew Christina feared him." See Compl. ¶¶ 21-22, 29.
According to the Complaint, however, Ames never admitted to
physically abusing Christina, and defendant Watnick had no
evidence that plaintiff admitted that Christina was afraid of
Ames or that there existed oppressive circumstances. See id. ¶¶
23, 31.

However, defendant Watnick, in making these statements
about physical abuse and oppressive circumstances, cited to an
opinion written by Judge Ramos, who presided over the underlying
state court litigation. See DiGennaro Declaration, Exhibit N,
Dkt. 14-14, at 8-9, 12; DiGennaro Declaration, Exhibit D, Dkt.
14-4. In that Opinion, Judge Ramos stated as follows:

> Underlying these issues are [Christina's] disturbing
> allegations of [Ames's] oppressive behavior, which
> [Christina] contends forced her to sign the documents
> and agreements. These allegations of oppressive
> circumstances are credible, given [Ames's] admission

in his deposition that he physically abused her "maybe
to alleviate some fear she had about what I might do."

DiGennaro Declaration, Exhibit D, at 3. Even assuming arguendo

that Judge Ramos was himself incorrect in his construction of

Ames' deposition, how can it be plausibly alleged that defendant

Watnick, in citing and stating that same construction back to

the same judge, was acting deceitfully?[4]

Similar deficiencies in plaintiff's allegations arise when

considering the next three allegedly deceitful statements, which

relate to documents that plaintiff calls a "material confession

of judgment" and a "letter agreement" (and which defendants

label the "Confession" and the "Penalty Letter"). See Compl. ¶

35. On December 5, 2012, in a written submission in support of a

motion seeking spoliation sanctions, defendants stated that

"Ames produced only one letter that preceded the date of the

Confession – the unsigned Feb. 17, 1993 letter about the

Confession and that stated that it was from Christina to

---

[4] Plaintiff argues that the New York Appellate Division, First Department had
reversed Judge Ramos's decision, and so "the trial court's finding [was] a
nullity." See Pl. Opp. Br. at 5. However, Judge Ramos's statements about
oppressive circumstances and physical abuse were made in the part of his
decision denying plaintiff's motion for summary judgment, and it was Judge
Ramos's grant of summary judgment to defendant, not his denial of summary
judgment to plaintiff, that was appealed. See DiGennaro Declaration, Exhibit
D, at 3; DiGennaro Declaration, Exhibit E, Dkt. 14-5. Furthermore, the
Appellate Division noted that Christina's claim of duress was not at issue on
appeal. See DiGennaro Declaration, Exhibit E, at 3.

Alkalay.[5] Conspicuously absent from Ames's and Alkalay's document productions are any drafts of the Confession, written communications about the Confession or notes about its drafting or its enforcement." See id. ¶ 36. In the same submission, defendants also stated that "Ames produced no documents relating to [the Penalty Letter's] creation." See id. Furthermore, defendant Watnick later repeated the same statement in his brief on appeal of the trial court's order granting spoliation sanctions. See id. ¶ 41.

Plaintiff Ames claims that these three statements were false and deceitful because he "did produce documents relating to both the confession of judgment and Penalty Letter in controversy, including their creation." Id. ¶ 37. A review of the underlying state court documents upon which the Complaint relies, however, makes clear that, read in context, Watnick's above-quoted statements were directed at plaintiff's failure to produce documents related specifically to the creation of the Confession of Judgment and Penalty Letter. See DiGennaro Declaration, Exhibit F, Dkt. 14-6, at 9. The documents plaintiff claims to have produced do not appear to be related to the creation of these instruments (other than the February 17, 1993

---

[5] Alkalay was plaintiff's attorney in the underlying state court action, and he had previously represented both Christina and Ames. See Def. Br. at 4; DiGennaro Declaration, Exhibit G, Dkt. 14-7 (Transcript of Proceedings Before the Honorable Charles E. Ramos).

letter that Watnick acknowledged plaintiff had produced). <u>See</u>
DiGennaro Declaration, Exhibit F, at 9; DiGennaro Declaration,
Exhibit I, Dkt. 14-9, at 6-7; DiGennaro Declaration, Exhibit J,
Dkt. 14-10, at 3. At worst, there is a reasonable disagreement
over the context of Watnick's statements, but nothing like a
plausible allegation that the statements were the product of
intentional deceit.

The same point applies to the sixth allegedly deceitful
statement, which concerned files in a case that both of the Rays
had brought against a building contractor, John Salomon. <u>See</u>
Compl. ¶ 38. The statement in question, filed in Christina's
December 5, 2012 brief seeking spoliation sanctions, was that
"without [the Salomon Action] files, Christina is unfairly
denied evidence . . . The prejudice here is especially severe
because there are no documents that address these issues and
plaintiff's attorneys had access to the Salomon Action file."
<u>See</u> <u>id.</u> ¶ 38. But as defendants point out, the wider context of
this statement is as follows:

> Without these files, Christina is unfairly denied
> evidence that could allow her to prove that the
> alleged sale of the House was a sham and that could be
> critical in cross-examining Ames and/or Alkalay. The
> prejudice here is especially severe because there are
> no documents that address these issues and plaintiff's
> attorney had access to the Salomon Action file while
> that case still was ongoing.

DiGennaro Declaration, Exhibit F, at 23. Though plaintiff now claims (as he did in the underlying state court litigation) that he did produce the relevant documents, see DiGennaro Declaration, Exhibit J, at 3; Pl. Opp. Br. at 8, he does not deny that, as Judge Ramos found in granting spoliation sanctions against plaintiff, no litigation hold was placed on Alkalay's litigation file on the matter. See DiGennaro Declaration, Exhibit G, Dkt. 14-7, at 12-15. Even if plaintiff is correct to assert that documents "that address these issues" were produced, nothing about this dispute gives rise to an inference that defendants' statements were intentionally false. The fact that Judge Ramos's ruling granting spoliation sanctions was reversed by the Appellate Division, see Pl. Opp. Br. at 9; DiGennaro Declaration, Exhibit V, Dkt. 14-22, does not suggest that Christina's counsel engaged in deceit.

The seventh and eighth allegedly deceitful statements concerned Ames's payment of Christina's credit card debt. See id. ¶ 46. In a brief filed in the underlying litigation on January 25, 2013, Watnick stated that "although plaintiff seeks to recover monies he paid toward Christina's credit card debts, he failed to produce a shred of documentary evidence that he ever made such payments." See id. ¶ 46. Defendant Watnick also stated (in a brief filed on December 5, 2012, see DiGennaro

Declaration, Exhibit F, at 23) that "no such files have been
produced and plaintiff's failure to preserve them denies
Christina evidence that would directly bear upon whether Ames
paid this credit card debt." See id. ¶ 46.[6] The Complaint
contends that plaintiff did produce documents relating to his
payment of Christina's credit card debts, and that defendants'
statements were deceitful. See id. ¶¶ 47, 48-49.

However, plaintiff's allegation of intentional deceit with
respect to these statements is, once again, highly implausible.[7]
For example, in court proceedings in front of Judge Ramos,
plaintiff's counsel was asked whether there was "any
substantiation that your client paid a credit card bill on the
account of Christina Ray," and answered "[t]here is testimony to
that effect" – with no mention of documentary evidence. See
DiGennaro Declaration, Exhibit O, Dkt. 14-15, at 37. In
addition, plaintiff cites the Appellate Division's statement
that

> [d]efendant's argument that plaintiff offered no
> evidence that he paid these debts is unavailing, as
> the agreement defendant signed expressly states that
> she alone accumulated these debts on specific credit

---

[6] As defendants point out, the end of this sentence reads "(which, as noted,
the IRS said there was no substantiation for)." See Def. Br. at 12 n.14;
DiGennaro Declaration, Exhibit F, at 23.

[7] The Court does not view as either relevant or sufficient, for the purposes
of supporting a plausible claim of deceitful intent, plaintiff's assertion
that if the Court converts the instant motion to one for summary judgment,
"Plaintiff is happy to supply" documents showing that he paid Christina's
credit card debt. See Pl. Opp. Br. at 10 & n.9.

> cards in plaintiff's name. Defendant, who has the
> burden of demonstrating prima facie entitlement to
> summary judgment . . . offered no evidence of a
> default by plaintiff on these debts, or that he does
> not remain liable for them.

See Pl. Opp. Br. at 10, citing Ray v. Ray, 876 N.Y.S.2d 383, 385

(1st Dep't 2009). But this statement shows at most that there

was an issue of material fact with respect to whether Ames paid

Christina's credit card debts. It does not remotely show that

Christina's attorneys acted with deceitful intent in arguing

that he did not. In sum, even if plaintiff were able to show

that defendants' statements about Christina's credit card debt

were unfounded, plaintiff has not provided sufficient grounds

for any finding of deceitful intent.

To make out a claim under New York Judiciary Law § 487, a

plaintiff must show, at a bare minimum, "that defendants: (1)

are guilty of deceit or collusion, or consent to any deceit or

collusion; and (2) had an intent to deceive the court or any

party." Iannazzo v. Day Pitney LLP, No. 04-cv-7413, 2007 WL

2020052, at *11 (S.D.N.Y. July 10, 2007). As the foregoing

examination of the underlying court documents on which

plaintiff's allegations are based demonstrates, plaintiff has

wholly failed to make out a plausible claim that defendants'

statements were intentionally deceitful. On this ground alone,
the Complaint must be dismissed.[8]

Independently, moreover, even assuming _arguendo_ that at
least one of the allegedly false statements had been adequately
alleged to be intentionally deceitful, the Complaint would still
have to be dismissed for failure to adequately allege that the
deceit was extreme or egregious.[9] To be sure, the requirement
that the deceit be extreme or egregious does not appear on the
face of the statute. Specifically, New York Judiciary Law § 487
simply reads, in relevant part: "An attorney or counselor who:
1. Is guilty of any deceit or collusion, or consents to any
deceit or collusion, with intent to deceive the court or any
party; . . . Is guilty of a misdemeanor, and in addition to the
punishment prescribed therefor by the penal law, he forfeits to
the party injured treble damages, to be recovered in a civil
action." N.Y. Judiciary Law § 487.

However, numerous New York State courts interpreting the
statute, as well as federal courts construing the state court
decisions, have concluded that liability attaches under these

---

[8] Nor did plaintiff, either in his papers or in oral argument, make out any
plausible claim that he could repair these deficiencies through an expanded
pleading, and hence the Complaint must be dismissed with prejudice.

[9] Defendants also argue that the instant action is an improper collateral
attack on the pending state court proceedings, see Defs. Br. at 24, and that
defendant Julie Stark should be dismissed from the action because plaintiff
makes insufficient allegations about her involvement in defendants' purported
deceit, see Defs. Br. at 2. While the Court need not reach these points, it
notes that they too present grounds for dismissal.

statutes only if the deceit is "extreme" or "egregious." See,
e.g., Savitt v. Greenberg Traurig, LLP, 5 N.Y.S.3d 415, 416 (1st
Dep't 2015); Englert v. Schaffer, 877 N.Y.S.2d 780, 781 (4th
Dep't 2009); Nason v. Fisher, 828 N.Y.S.2d 51, 52 (1st Dep't
2007); Donaldson v. Bottar, 715 N.Y.S.2d 168, 169 (4th Dep't
2000); Ulrich v. Hausfeld, 704 N.Y.S.2d 495, 495 (2d Dep't
2000); Schindler v. Issler & Schrage, P.C., 692 N.Y.S.2d 361,
362 (1st Dep't 1999); Gonzalez v. Gordon, 649 N.Y.S.2d 701, 702
(1st Dep't 1996); Alliance Network, LLC v. Sidley Austin LLP,
987 N.Y.S.2d 794, 803 (N.Y. Sup. Ct. 2014); Wiggin v. Gordon,
455 N.Y.S.2d 205, 207, 209 (N.Y. Civ. Ct. 1982). See also
Sabatini Frozen Foods, LLC v. Weinberg, Gross & Pergament, LLP,
No. 14-cv-02111, 2015 WL 5657374, at *5 (E.D.N.Y. Sept. 23,
2015); O'Callaghan v. Sifre, 537 F. Supp. 2d 594, 596 (S.D.N.Y.
2008). The reasons for such a limitation on § 487 liability are
weighty:

> By confining the reach of the statute to intentional
> egregious misconduct, this rigorous standard affords
> attorneys wide latitude in the course of litigation to
> engage in written and oral expression consistent with
> responsible, vigorous advocacy, thus excluding from
> liability statements to a court that fall "well within
> the bounds of the adversarial proceeding." Lazich v.
> Vittoria & Parker, 189 A.D.2d 753, 592 N.Y.S.2d 418,
> 419 (2d Dep't 1993). Under this threshold, an action
> grounded essentially on claims that an attorney made
> meritless or unfounded allegations in state court
> proceedings would not be sufficient to make out a
> violation of § 487.

O'Callaghan, 537 F. Supp. 2d at 596. If § 487 were to cast too wide a net, it would chill proper advocacy and encourage parties to use § 487 suits as tactics to stall and gain leverage over their opponents, with highly detrimental effects on the fair and efficient progress of litigation. See Alliance Network, 987 N.Y.S.2d at 803.

Further reinforcing the conclusion that liability under § 487 is reserved for extreme or egregious cases is the fact that Judiciary Law § 487 has its "origin in the criminal law of England," and thus, for this statute, "the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law." Amalfitano v. Rosenberg, 903 N.E.2d 265, 268 (N.Y. 2009).[10] Consequently, § 487 "must be strictly construed." Kaye Scholer LLP v. CNA Holdings, Inc., No. 08-cv-5547, 2010 WL 1779917, at *2 (S.D.N.Y. Apr. 28, 2010). This supports a reading of the statute that reserves liability only for the egregious or extreme case.

---

[10] Amalfitano v. Rosenberg began as a federal suit in the Southern District of New York. See Amalfitano v. Rosenberg, 428 F. Supp. 2d 196, 198 (S.D.N.Y. 2006) (Buchwald, J.). Rosenberg, an attorney, represented the Amalfitanos' adversary in underlying state court litigation. Judge Buchwald, after trial, issued findings of fact and conclusions of law determining that Rosenberg had violated § 487. Rosenberg then appealed to the Second Circuit, which affirmed the district court's conclusion that Rosenberg had violated § 487, but certified to the New York Court of Appeals two questions that would affect the damages for which Rosenberg was liable. See Amalfitano v. Rosenberg, 533 F.3d 117, 126 (2d Cir. 2008). The New York Court of Appeals answered these certified questions in Amalfitano v. Rosenberg, 903 N.E.2d 265, 268 (N.Y. 2009). However, all subsequent references below to "Amalfitano" refer to the Second Circuit case.

Plaintiff argues, however, that the Second Circuit's decision in Amalfitano v. Rosenberg, 533 F.3d 117 (2d Cir. 2008) undermines the "extreme" or "egregious" standard under § 487. See Pl. Opp. Br. at 11-14; Tr. 9:8-25. In Amalfitano, the Second Circuit stated that § 487

> applies to any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive. . . . It would appear that some courts in New York have imposed an additional prerequisite to recovery: that the plaintiff in a section 487 action show "a chronic and extreme pattern" of legal delinquency by the defendant. . . . That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act.

Amalfitano, 533 F.3d at 123-24. But even assuming arguendo that Amalfitano stands for the proposition that no "pattern" of deceitfulness or "chronic" deceit is necessary to state a claim under § 487,[11] Amalfitano does not erase the requirement – elaborated in numerous New York state cases[12] – that a deceitful statement actionable under this statute be "extreme" or "egregious." Amalfitano, at most, stands for the proposition

---

[11] It is not by any means clear that Amalfitano explicitly rejects the "chronic and extreme pattern" requirement for an actionable statement under § 487. See Tacopina v. Kerik, No. 14-cv-749, 2016 WL 1268268, at *6 n.7 (S.D.N.Y. Mar. 31, 2016). Nor, of course, does the authority to interpret the statute ultimately rest with the federal courts, but with the New York State courts. Indeed, the First Department, for its part, has cited the "chronic" and "pattern" language after Amalfitano. See, e.g., Emery v. Parker, 968 N.Y.S.2d 480, 481 (1st Dep't 2013) ("Defendants did not engage in conduct amounting to a chronic and extreme pattern of legal delinquency to support such a [§ 487] claim.") (internal quotation marks omitted).

that a single deceitful statement can trigger § 487 liability.
See Sabatini, 2015 WL 5657374, at *5 ("the statute [§ 487]
itself supports liability for a 'single intentionally deceitful
or collusive act,' if sufficiently egregious.") (quoting
Amalfitano, 533 F.3d at 123); see also Trepel v. Dippold, No.
04-cv-8310, 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005) ("A
single act or decision, if sufficiently egregious and
accompanied by an intent to deceive, is sufficient to support [§
487] liability."). But Amalfitano does not even purport to
address, let alone remove, the threshold requirement that the
deceitful statement, to be actionable, must be extreme or
egregious.

    To be sure, there appears to be no ruling from the New York
Court of Appeals on whether deceitful statements must be
"extreme" or "egregious" in order to be actionable under § 487.[13]
And plaintiff cites to decisions of the Second and Fourth
Appellate Departments to support its position that an intent to
deceive – without any further "extreme" or "egregious"
requirement – suffices for a plaintiff to state a claim under §
487. See Pl. Opp. Br. at 12, citing Duszynski v. Allstate Ins.
Co., 967 N.Y.S.2d 796, 798 (4th Dep't 2013); Dupree v. Voorhees,

---

[13] Regrettably, New York law, unlike, for example, the law of Delaware, does
not provide for such issues to be certified to the state's highest court by a
federal district court, but only by a federal court of appeals. See Indus.
Risk Insurers v. Port Auth. of N.Y. & N.J., 493 F.3d 283, 285 n.1 (2d Cir.
2007); In re Hechinger Inv. Co. of Delaware, 280 B.R. 90, 93 (D. Del. 2002).

959 N.Y.S.2d 235, 236 (2d Dep't 2013). However, even after
Amalfitano, the First Department has repeatedly deployed the
"extreme" or "egregious" standards, see, e.g., Facebook, Inc. v.
DLA Piper LLP, 23 N.Y.S.3d 173, 178 (1st Dep't 2015); Savitt, 5
N.Y.S.3d at 416; Strumwasser v. Zeiderman, 958 N.Y.S.2d 395, 396
(1st Dep't 2013), and the Fourth Department has, on at least one
occasion, done so as well. See Englert, 877 N.Y.S.2d at 781.

Under the Erie doctrine, a federal court sitting in
diversity applies the law of the state in which it sits, and
"the views of the state's highest court with respect to state
law are binding on the federal courts." Wainwright v. Goode, 464
U.S. 78, 84 (1983); see Erie R. Co. v. Tompkins, 304 U.S. 64, 78
(1938). "Where the substantive law of the forum state is
uncertain or ambiguous, the job of the federal courts is
carefully to predict how the highest court of the forum state
would resolve the uncertainty or ambiguity." Phansalkar v.
Andersen Weinroth & Co., L.P., 344 F.3d 184, 199 (2d Cir. 2003)
(internal quotation marks omitted). "In doing so, . . . we must
give proper regard to the decisions of a state's lower courts,"
and "[w]e may also consider the decisions of federal courts
construing state law." Phansalkar, 344 F.3d at 199 (internal
citation and quotation marks omitted).

Here, while New York's intermediate appellate courts have

16

arguably taken differing positions on the standards for § 487
claims, there is ample authority for the "extreme" or
"egregious" position, and several federal district courts in New
York have continued to apply the heightened standard. See
Sabatini, 2015 WL 5657374 at *5; Tacopina, 2016 WL 1268268 at
*6; Burton v. Krohn (In re Swift), 2016 Bankr. LEXIS 262, at *15
(Bankr. E.D.N.Y. Jan. 27, 2016). In light of the extensive New
York precedent supporting a stringent reading of § 487 and the
compelling policy reasons for this position (see supra), this
Court sees no difficulty in predicting that the New York Court
of Appeals would adopt the "extreme" or "egregious" requirement
for actionable § 487 claims.

    Turning to the instant case, the allegedly deceitful
statements do not rise to the level of "egregious" or "extreme";
indeed, the Complaint does not plausibly so allege.[14] Rather,

_____

[14] Compare the instant case, for example, to Armstrong v. Blank Rome LLP, 2
N.Y.S.3d 346 (1st Dep't 2015)(plaintiff stated a claim under § 487 where
defendant attorneys allegedly "concealed a conflict of interest that stemmed
from defendant law firm's attorney-client relationship with Morgan Stanley
while simultaneously representing plaintiff in divorce proceedings against
her ex-husband, a senior Morgan Stanley executive, who participated in Morgan
Stanley's decisions to hire outside counsel"); Kurman v. Schnapp, 901
N.Y.S.2d 17, 18 (1st Dep't 2010) (plaintiff stated a claim under § 487 where
he alleged that "defendant deceived or attempted to deceive the court with a
fictitious letter addressed to him from the former licensing director of the
City's Taxi and Limousine Commission (TLC) that stated, inter alia, that
plaintiff was under a lifetime ban on owning any licenses with the TLC");
Izko Sportswear Co. v. Flaum, 809 N.Y.S.2d 119, 121 (2d Dep't 2006)
(plaintiff withstood a motion for summary judgment on a § 487 claim, where
defendant attorneys affirmed that they had no connection to bankrupt
plaintiff's creditors, though they had allegedly previously represented one
of plaintiff's creditors and revealed to this creditor, unbeknownst to
plaintiff, that plaintiff was contemplating declaring bankruptcy).

plaintiff, although making a half-hearted (and unconvincing) argument in his opposition brief that the statements here alleged are extreme and egregious, see Pl. Opp. Br. at 14-15, principally argues that such is not required. But since this Court concludes that New York law does so require, this provides a second, independent ground for dismissing the Complaint, in addition to the failure to plausibly allege deceitful intent, as previously discussed.

In fact, the instant case exemplifies the perils resulting from the pursuit of implausible § 487 claims. The underlying state court lawsuit is now in a ready-for-trial posture after eighteen long and hard-fought years of litigation. See Def. Br. at 1. To permit plaintiff, at this juncture, to delay the proceedings by further litigating the alleged deceitfulness of opposing counsel's statements would be to risk rewarding tactics that instead ought to be deterred. Parties should not be encouraged to parlay reasonable disagreements arising in adversarial litigation into factually-intensive investigations of opposing counsel's conduct.

For all the foregoing reasons, the Clerk of the Court is hereby instructed to promptly enter judgment dismissing the Complaint with prejudice.

18

SO ORDERED.

Dated:     New York, NY
           April 26, 2016                        JED S. RAKOFF, U.S.D.J.